UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH


**MARGARET RADFORD**
    Plaintiff

**v.**                                                                             **No. 5:10CV-00022-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant


## MAGISTRATE JUDGE'S REPORT and RECOMMENDATION

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Dennis Fentress. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 10 and 11, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on July 31, 2009, by administrative law judge (ALJ) Phylis Pierce. In support of her decision denying Title II benefits, Judge Pierce entered the following numbered findings:

1. The claimant met the insured status requirements of the Social Security Act from the onset date alleged, July 8, 2006, through the date of this decision.

2. The claimant did not engage in substantial gainful activity at any time pertinent to this decision (20 CFR 404.1571 et seq.). While there are some earnings reported in 2007, these do not constitute substantial gainful activity.

3. The claimant has the following severe impairment: residuals of status post lumbar surgery (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).

6. The claimant is capable of performing past relevant work as a customer service representative. This work did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 8, 2006, the alleged onset date, through the date of this decision (20 CFR 404.1520(f)).

(Administrative Record (AR), pp. 12-16).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight.

*Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a

3

de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with all the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the

Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Procedural history

In July of 2006, the plaintiff filed an application for Title II benefits alleging that she became disabled on July 8, 2006 (AR, p. 78). On April 17, 2007, the plaintiff was examined at the request of the Commissioner by Dilip Unnikrishnan, M.D. Dr. Unnikrishnan's narrative report is at AR, pp. 257-260. In light of Dr. Unnikrishnan's report and the record as a whole, the non-examining state agency program physician, Patricia MacDonald, completed the standard physical residual functional capacity assessment (RFC) form in a manner that is consistent with an ability to perform a significant range of "light" work as defined at 20 C.F.R. § 404.1567(b) (AR, pp. 263-270). Dr. MacDonald rejected portions of Dr. Unnikrishnan's report for the following reasons (AR, p. 269):

> [Consultative examiner] vendor Dr. Dilip Unnikrishnan noted that the [claimant] should be limited to standing and walking for 15 minutes and sitting for 2 hours, vision/communication were normal, lifting and carrying should be limited to 10 [pounds] and exposure to extremities of temperature, humidity, and vibration would worsen joint pain, she would be able to balance and would not be able to climb, crouch or crawl. Opinion is given little weight because exam was not complete due to [claimant's] refusal to attempt [range of motion] and the other objective medical evidence gives other information.

In April of 2007, the state agency denied the plaintiff's application (AR, p. 55).

The plaintiff sought a reconsideration. In July of 2007, the state agency medical consultant, Timothy Gregg, M.D., completed the RFC form in a manner identical to that of Dr. MacDonald, stating that the prior RFC was "affirmed" (AR, p. 326). In July of 2007, the state agency issued its reconsideration (AR, p. 67). Both the initial and the reconsideration decisions were fifth-step denial decisions.

In May of 2009, a hearing was held before Judge Pierce at which no vocational expert (VE) testified. In July of 2009, Judge Pierce issued her written decision in which, among other things, she accepted the opinions of Drs. MacDonald and Gregg (AR, p. 15). In December of 2009, the Appeals Council declined to disturb Judge Pierce's decision, thereby rendering it the final decision of the Commissioner herein (AR, pp. 1-3).

### Whether the plaintiff can perform PRW

The parties treat the ALJ's decision as a fourth-step denial in which the ALJ found that the plaintiff retains the ability to perform her past relevant work (PRW) as a customer service representative. As a preliminary matter, the magistrate judge observes that the ALJ's findings are somewhat equivocal or ambiguous as to whether this case was denied at step four or step five. On one hand, the ALJ specifically states that "[t]he claimant is capable of performing [PRW] as a customer service representative." Finding No. 6. On the other hand, the ALJ: 1) acknowledged that, by definition, PRW "must have been SGA [substantial gainful activity]," citing 20 C.F.R. § 404.1560(b) (AR, p. 11); and 2) proceeded to find that the plaintiff did not engage in SGA "at any time pertinent to this decision" and, more specifically, that her "earnings reported in 2007 [as a customer service representative], do <u>not</u> *(emphasis added)* constitute [SGA]." Finding No. 2.

6

Despite this apparent tension or inconsistency in the ALJ's findings, as noted at the outset of our discussion, the parties treat the ALJ's decision as a fourth-step denial. The plaintiff's principal contention upon judicial review is that substantial evidence does not support the ALJ's finding that her prior work resulted in substantial gainful activity (SGA) so as to qualify as PRW. In his fact and law summary, the Commissioner notes that the plaintiff reported that she worked as a customer service representative for between three and five months in 2006 through 2007 (Docket Entry No. 11, p. 19). The Commissioner admits that the "Plaintiff is correct that her total earnings divided over 5 months do not exceed the level for [SGA]" (p. 19). However, the Commissioner argues that "<u>assuming</u> *(emphasis added)* that she worked there for only 3 months, Plaintiff's earnings would ... exceed the amount required for [SGA]" (pp. 19-20). The magistrate judge concludes that the Commissioner's position is unpersuasive because there is no evidence in the administrative record in support of this assumption that the plaintiff worked for only three months. The plaintiff's contention is persuasive, and a remand is required in which the sequential evaluation is advanced to the fifth and final step. Alternatively, a remand is required for specific findings as to the number of months the plaintiff worked as a customer service representative and whether her earnings rose to the level of SGA.

The more difficult question is whether the ALJ's erroneous fourth-step denial was harmless or reversible error for purposes of judicial review. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir., 2005). Hence, under principles of "harmless error" review, courts have held that a fourth-step denial should be affirmed if the evidence adequately establishes that a fifth-step denial

7

would have been supported. See, for example, *Pechatsko v. Commissioner*, 369 F.Supp.2d 909 (N.D.Ohio, 2004). Read through the lens of a "harmless error" review, Judge Pierce's decision may be interpreted as a decision that, although the plaintiff's prior job as a customer service representative does not qualify as PRW supporting a fourth-step denial, substantial evidence nevertheless supports a fifth-step finding that she retains the ability to perform a significant number of jobs in the national economy, including her prior job as a customer service representative.

However, in light of the absence of VE testimony in this case, even if we were to assume for the sake of argument that the plaintiff retains the ability to perform this prior job in the national economy, there is no substantial basis for concluding that the job exists in significant numbers in the national economy. Compare *Pechatsko*, supra, wherein a fifth-step denial was supported by VE testimony. Accordingly, the dispositive issue in this case is whether substantial evidence would have supported a fifth-step denial in the absence of VE testimony.

Generally, there are two methods by which the Commissioner may satisfy his fifth-step burden. The first is utilization of VE testimony at the administrative hearing. We have already noted that there was no VE testimony in this case. The second method by which the Commissioner may satisfy his fifth-step burden is a direct application of the medical-vocational guidelines of Appendix 2 of the regulations. The medical-vocational guidelines, or "grids," consist of a series of administrative findings as to whether significant numbers of jobs exist in the national economy for claimants having various combinations of the age, education, work experience, and maximum exertional capacity. If a claimant's medical-vocational profile is located in the appendix listings, a conclusion of "disabled" or "not disabled" is directed without further analysis. However, because the grids contemplate only exertional, or strength, capacities, utilization of the grids to deny benefits

is inappropriate if the claimant is found to suffer from at least one non-exertional impairment that "significantly limits his ability to do a full range of work at a designated level." *Kimbrough v. Secretary*, 801 F.2d 794, 796 (6th Cir., 1986). In this case, the "designated level" is either "light" or "sedentary" work because the grid rules for both exertional categories direct an ultimate finding of "not disabled." Specifically:

1. The plaintiff was born on January 3, 1969 (AR, p. 78). Therefore, she was 40 years old on July 31, 2009, when the Commissioner rendered his final decision herein. An individual under age 50 is classified as a "younger" individual. 20 C.F.R. § 404.1563(c).

2. Any "younger" individual who is capable of "light" work is "not disabled" as contemplated by the grids. See rules 202.16 through 202.22.

3. Any "younger individual age 18-44" who is capable of "sedentary" work also is "not disabled." See rules 201.23 through 201.29.

In summary, although the ALJ's fourth-step denial is not supported by substantial evidence, a fifth-step denial would have been supported (hence, any error was harmless) if substantial evidence supports a conclusion that the plaintiff 1) retains the exertional capacity to perform "sedentary" work; and 2) does not suffer from any non-exertional impairment that would significant limit her ability to do the full range of "sedentary" work. At the fifth step of the sequential evaluation process, the burden of going forward with evidence of non-disability is upon the Commissioner. *Foster v. Commissioner*, 279 F.3d 348 (6th Cir., 2001). As to issue no. 1, supra, the magistrate judge concludes that the completion of the RFC forms by Drs. MacDonald and Gregg provides substantial evidence that the plaintiff can perform "sedentary" work. In fact, these physicians found that the plaintiff can perform "light" work.

9

The more difficult question is issue no. 2, <u>supra</u>, to-wit, whether substantial evidence supports a conclusion that the plaintiff does not suffer from any non-exertional impairment that significantly limits her ability to do a full range of "sedentary" work. Drs. MacDonald and Gregg found that the plaintiff suffers from the following "postural" limitations: She can "never" balance and can only "occasionally" climb ramps, stairs, ladders, etc.; stoop; kneel; crouch; and crawl (AR, pp. 265 and 327). In addition, she suffers from the following "environmental" limitations: She must avoid "even moderate" exposure to vibration and hazards of machinery, heights, etc. (AR, pp. 265-267 and 327-329).

The magistrate judge concludes that the Commissioner has failed to show that the full range of sedentary work would not be significantly limited by the foregoing postural and environmental limitations. On the contrary, it appears that a substantial number of sedentary jobs in the national economy, for example, manufacturing jobs that require use of power tools, <u>would</u> be reduced or eliminated by a need to avoid hazards of machinery. Therefore, we are unable to conclude that that the ALJ's erroneous fourth-step denial was "harmless." We shall recommend a remand for a new decision and further administrative proceedings. The plaintiff's remaining contention shall be considered in turn.

**Whether the plaintiff can perform the full range of light work**

The ALJ found that the plaintiff has the RFC "to perform the full range of light work." Finding No. 5. In the body of her decision, the ALJ stated that this finding "is well supported ... by the opinion of State Agency medical sources," i.e., Drs. MacDonald and Gregg (AR, p. 15). The plaintiff argues that the postural and environmental limitations found by these physicians are incompatible with performance of the full range of light work. For essentially the same reasons stated above, the magistrate judge concludes that the argument is persuasive.

10

## Mental impairment

Next, the plaintiff objects to the ALJ's finding of a non-severe mental impairment. According to the plaintiff, she raised the issue of a mental impairment for the first time after the state agency decisions, while her claim was pending before the ALJ. The plaintiff submitted treatment records from the Pennyroyal Mental Health Center where she was treated by nurse practitioner Martha Sedberry. Ms. Sedberry prescribed various psychotropic medications. In March of 2008, Ms. Sedberry completed the standard mental assessment form finding several "marked" limitations of function. According to Ms. Sedberry (AR, p. 376):

> Ms. Radford suffers from bipolar disorder not otherwise specified. Because of this chronic condition she has poor short-term memory which limits her ability to function in a work environment. She would have difficulty understanding and carrying out instructions. Her irritability would interfere with her ability to relate well with supervisors and co-workers. Her concentration is poor. Her ability to adapt to situations in a work environment is impaired.

Ms. Sedberry is the only mental health professional of record to provide an opinion as to the severity of the plaintiff's mental impairment.

In her written decision, the ALJ noted that the "State Agency medical sources did not rate a mental impairment" (AR, p. 13). This, of course, was because no mental impairment had been alleged, not because the state agency medical sources found it to be non-severe. In conclusory fashion, the ALJ rejected Ms. Sedberry's opinion because it was found to be "inconsistent with clinical findings of record including mental health treatment records" and found that the plaintiff's mental impairment does not "cause more than minimal limitation in [her] ability to perform basic mental work activities," hence, it is "non-severe" (AR, p. 12).

The regulations make clear that nurse practitioners such as Ms. Sedberry are not considered "acceptable medical sources," but are "other sources" whose opinions an ALJ is required to consider. 20 C.F.R. § 404.1513(d)(1). The proper treatment of such "other sources" has been clarified by Social Security Ruling 06-03p, which notes that:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file.

The magistrate judge concludes that the ALJ's rejection of Ms. Sedberry's evaluation of the functional effects of the plaintiff's mental impairments was conclusory and lacked a substantial basis. Alternatively, even if the ALJ acted within her province in rejecting Ms. Sedberry's opinion, the problem in this case is that the record contains no <u>contradictory</u> opinion by a mental health professional. As a lay individual, the ALJ was "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Commissioner*, 172 F.3d 31, 35 (1st Cir., 1999). This was not a case in which the ALJ simply chose to credit one professional opinion over another. As noted above, Ms. Sedberry was the <u>only</u> source to offer a professional opinion as to the severity of the plaintiff's mental impairment, and the absence of a "rating" by the state agency medical sources in no way indicated that they were of the opinion that the plaintiff's mental impairment was non-severe. Therefore, upon remand, if the Commissioner chooses to find a non-severe mental impairment, that finding should be supported by the opinion of at least one mental health professional.

**Obesity**

Finally, the plaintiff argues that the ALJ failed to properly evaluate her obesity. In April of 2007, Dr. Unnikrishnan noted that the plaintiff had a height of 5 feet 2 inches and a weight of 220 pounds (AR, p. 258). Body mass index (BMI) is defined as the ratio of an individual's weight in kilograms to the square of her height in meters. Therefore, the plaintiff had a BMI of 40.2. See BMI calculator at www.nhlbisupport.com/bmi. Clinically, an individual with a BMI of 40 or above is deemed to be at Level III, or "extreme," obesity. See Social Security Ruling (SSR) 02-1p.

In her written decision, the ALJ did not mention the plaintiff's obesity. In *English v. Astrue*, 2010 WL 424971, the district court for the northern district of Ohio had occasion to consider the fact that "[t]here is no mention whatsoever of [Ms. English's Level I through Level II obesity] in the ALJ's decision." The court acknowledged that Ms. English had "not been diagnosed by her treating physician, or by another physician, as obese and at the evidentiary hearing did not complain of weight related limitations." The court further acknowledged that it "may well be that the plaintiff's obesity is not, in combination with her other impairments, contributory to her alleged disability." Nevertheless, the court held that the ALJ's failure to even consider this question is contrary to the assurance set out in SSR 02-1p that "we will do an individualized assessment of the impact of obesity on an individual's functioning." Hence, a remand for further proceedings was deemed appropriate. Similarly, in *Hendricks v. Astrue*, 2008 WL 2783277, this court held that, despite the fact that the Ms. Hendricks did not claim obesity as an impairment prior to issuance of the ALJ's decision, there was adequate evidence in the medical records to put the ALJ on notice of the plaintiff's Level I / Level II obesity, hence, the ALJ's failure "to make any findings regarding this impairment despite an obligation to do so" warranted a remand. The magistrate judge concludes

that, upon remand, the ALJ should engage in an individualized assessment of the impact of the plaintiff's extreme obesity upon her functional ability, including any exacerbation of her back impairment and effect upon her ability to sustain activities throughout an eight-hour workday.

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for a new decision and for further administrative proceedings deemed necessary or appropriate by the Commissioner and not inconsistent with this report. Specifically, the Commissioner may 1) obtain at least one opinion from a mental health professional as to whether the plaintiff suffers from a "severe" mental impairment; 2) do an individualized assessment of the impact of the plaintiff's obesity upon her functional ability; and 3) determine whether, despite her back impairment, obesity, and any mental impairment, a significant number of jobs exist in the national economy that she can still perform. In the event the Commissioner chooses to make the latter determination based upon a direct application of the medical-vocational guidelines contained in Appendix 1 of the regulations, the Commissioner may identify an evidentiary basis for finding that any non-exertional impairment found to be present does not significantly limit the plaintiff's ability to do a full range of work at a designated exertional level.

# NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).